# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

THOMAS D. SANDERS,

      Plaintiff,

v.                                                    Case No. 2:21-cv-02585-MSN-cgc
                                                      JURY DEMAND

CITY OF MEMPHIS, TENNESSEE,
JAMES L. KELLUM, and
JOHN AND JANE DOES 1-10 MEMPHIS
POLICE DEPARTMENT OFFICERS
in their Official and Individual Capacities,

      Defendants.

## ORDER GRANTING DEFENDANT CITY OF MEMPHIS' MOTION TO DISMISS

Before the Court is Defendant City of Memphis' ("City") Motion to Dismiss, filed October 7, 2021. (ECF No. 11, "Motion".) Plaintiff Thomas Sanders ("Plaintiff") timely filed his Response on November 2, 2021. (ECF No. 13.) The City filed its Reply on November 15, 2021. (ECF No. 14.) For reasons below, the City's Motion is **GRANTED**.

## BACKGROUND

The Court must determine whether the Complaint states a plausible claim against the City, a municipality, arising from conduct by several law enforcement officers when they apprehended and arrested Plaintiff. It does not.

Plaintiff sued the City and several Memphis Police Department ("MPD") officers individually for compensatory and punitive damages related to injuries incurred from conduct that allegedly violated his constitutional rights under 42 U.S.C. § 1983. (*See* ECF No. 1.) Specifically,

on or about May 21, 2021, Plaintiff rode his all-terrain vehicle ("ATV") on Burns Street toward

Pendleton Street in Memphis, Tennessee.  (*Id*. at PageID 4.)  Plaintiff alleges that Defendant MPD

Officer James L. Kellum ("Officer Kellum") "unreasonably and violently pulled the handlebars of

[his] ATV and forced . . . Plaintiff Sanders's ATV to strike the front of a parked police cruiser."

(*Id.*)   It is further alleged that the Defendant Officers struck and restrained Plaintiff unreasonably

and used excessive force when handcuffing Plaintiff, resulting in injuries that were subsequently

treated at Methodist Hospital South.  (*Id.* at PageID 4–5.)  Plaintiffs also allege that Defendant

Officers "slammed [Plaintiff] onto the ground." (*Id.* at PageID 8.)[1]  On September 20, 2021,

Plaintiff filed his Complaint against Defendant Officers in their official and individual capacities

(Claim I) and the City of Memphis (Claim II).  (*Id.* at 7, 19.)  The City filed its Motion under Fed.

R. Civ. P. 12(b)(6) on October 7, 2021.  (ECF No. 11.)

## LEGAL STANDARD

### a. Motion to Dismiss

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court

must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff."  *Cook v. Ohio Nat'l Life Ins. Co*.,

961 F.3d 850, 855 (6th Cir. 2020) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538

(6th Cir. 2012)).  The Court adopts this framework to determine whether the complaint alleges

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[1] Service of process was issued as to the City and Officer Kellum on September 20, 2021.  (ECF No. 5.)  Service was returned executed as to the City on October 7, 2021.  (ECF No. 10.)  However, service was returned unexecuted as to Officer Kellum.  (ECF No. 12.)  Therefore, Officer Kellum is not a party before the Court and this Order does not address claims against him.  This Order only addresses the City's Motion to Dismiss.

(2007)).  The complaint will be found plausible on its face only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  While a complaint need not include detailed factual allegations, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Stated differently, "[t]he factual allegations need not be overly detailed, but nor can they merely recite the elements of a cause of action and make a 'the-defendant-did-it' allegation." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759 (6th Cir. 2020); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) ("Factual allegations must be enough to raise a right to relief above [a] speculative level.")  If a court, relying on its judicial experience and common sense, determines that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### b. Municipal Liability

"To prevail on a cause of action under [42 U.S.C.] § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)); *see Gomez v. City of Memphis*, No. 2:19-cv-02412-JPM-tmp, 2021 WL 1647923, *54 (W.D. Tenn. 2021).  "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate

training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 876 (6th Cir. 2021) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Whereas the first theory simply requires a plaintiff to "identify" a formal policy, the latter three require more. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008). After all, "[l]ocating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Turning to the second theory, "a 'custom' can give rise to municipal liability when the 'practice is so widespread as to have the force of law.'" *North v. Cuyahoga Cnty*, 754 F. App'x 380, 386 (6th Cir. 2018) (quoting *Brown*, 520 U.S. at 404–05).[2]

The third theory requires a plaintiff to show: "(1) the training program is inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413–14 (6th Cir. 2015) (quoting *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)). To show "deliberate indifference" under this theory, a plaintiff must "show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this

---

[2] Policy and custom are distinct. *Compare Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986)) ("Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality"), *with Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) ("A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice.").

4

particular area was deficient and likely to cause injury." *Fisher v. Hardin*, 398 F.3d 837, 849 (6th

Cir. 2005); *see Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (citing *City of Canton*

*v. Harris*, 489 U.S. 378, 103 (1989)); *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th

Cir. 1997) (quoting *Brown*, 520 U.S. at 404–05) ("'Deliberate indifference' is a stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

action."). "The easiest way for an individual to meet this burden is to point to past incidents of

similar police conduct that authorities ignored." *Birgs v. City of Memphis*, 686 F. Supp. 2d 776,

780 (W.D. Tenn. 2010). "[A] single violation, 'accompanied by a showing that a municipality has

failed to train its employees to handle recurring situations presenting an obvious potential for such

a violation, could trigger municipal liability.'" *Bonner-Turner*, 627 F. App'x at 414 (quoting

*Brown*, 520 U.S. at 409). "However, mere allegations that an officer was improperly trained or

that an injury could have been avoided with better training are insufficient to make out deliberate

indifference." *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011); *see Miller*, 408

F.3d at 816.

Fourth, to demonstrate that a municipality follows a "custom of tolerance" or inaction

toward constitutional harm, the Sixth Circuit "require[s] plaintiffs to show (1) a 'clear and

persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality,

(3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations."

*Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015); *see Powers v. Hamilton Cnty.*

*Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). The Sixth Circuit affirmed lower

courts' decisions to grant motions to dismiss in similar cases where the plaintiff "has only his

experience on which to rely" and does not allege "similar incidents" involving others. *Shorts v.*

*Bartholomew*, 255 F. App'x 46, 58 (6th Cir. 2007); *see, e.g.*, *Garretson v. City of Madison Heights*,

5

407 F.3d 789, 795–96 (6th Cir. 2005) ("But we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff.")  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.

**DISCUSSION**

### a. Parties' Positions

The Complaint invokes the second, third, and fourth theories discussed above to justify Plaintiff's position under *Monell* and survive the City's Motion.  First, Plaintiff argues that the City has a "practice of overlooking constitutional torts" that "may be so common and well-settled that it fairly represents official policy."  (ECF No. 1 at PageID 12–13.)  Second, he cites *Pineda v. City of Houston*, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000) to assert that the City "failed to train a single officer," despite its policymakers knowing about a "pattern of unconstitutional misconduct" and "clear warning that a particular Officer posed a danger to citizens," and exhibited "deliberate indifference" toward the "rights, safety, or welfare of others, including Plaintiff."  (ECF No. 1 PageID 13–16.)  Finally, he alleges "Defendant City had actual, subjective awareness of the risks involved, but nevertheless proceeded . . . ."  (*Id.*)

The City argues that Plaintiff has failed to raise a colorable § 1983 claim under *Monell* for four reasons.  First, citing *Iqbal*, it maintains that Plaintiff's "failure to train" and "custom of tolerance" claims are "all purely conclusory in nature and without any basis in fact."  556 U.S. at 678.  (ECF No. 11 at PageID 39.)  Specifically, the City argues that the Complaint "contains no facts that could plausibly lead one to believe that the City was aware of prior claims of unconstitutional conduct or that the City deliberately ignored a history of abuse by Defendant Officers."  (*Id.* at PageID 41.)  Second, the City asserts that Plaintiff's "excessive force" claims are likewise conclusory because they do not show that the City's policy or custom constituted the

6

"moving force of the constitutional violation" and therefore fail to implicate the City. *Monell*, 436 U.S. at 694. (*Id.* at PageID 42.) Third, the City contends that Plaintiff's First, Fifth, and Eighth Amendment claims must fail because Plaintiff has alleged no federal action and has failed to identify a city policy, connect it to the city, and show the policy's execution caused the injury sustained. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (*Id.* at PageID 43–44.) Finally, the City argues that any state law claims against it fail under "enumerated exceptions" in Tennessee's Governmental Tort Liability Act ("GTLA"). (*Id.*)

Plaintiff responds that the City misconstrues the pleading standard announced in *Twombly* and *Iqbal* when it argues that he offered insufficient facts to show the City maintained a policy or custom of overlooking constitutional violations by its officers.[3] (ECF No. 13 at PageID 51–53.) Specifically, Plaintiff believes that the Complaint contains sufficient factual allegations to withstand the City's Motion and cites a specific example of allegedly excessive force by MPD officers against ATV riders in his Response. (*Id.* at PageID 54.) He also argues that his GTLA claim survives under the "intentional tort exception," which "preserves immunity for suits claiming negligent injuries arising from civil rights violations." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (*Id.* at PageID 60–61.) Finally, Plaintiff submits that his First Amendment retaliation claim survives because the City's cited authority, *Garner*, involved a *post-*

---

[3] The Court will not consider new factual allegations included in the Response not previously raised in the Complaint. *See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541–42 (6th Cir. 2012) (citing Moore's Federal Practice § 12.34 ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")); *see, e.g.*, *Shinault v. City of Memphis Fire Dep't*, No. 14-2865-SHL-dkv, 2015 WL 4756499, *2 n. 2 ("The court is limited to the facts and legal claims as raised in the pleadings; as a result, the additional facts asserted in Shinault's response to the motion to dismiss are not part of the lawsuit and the court will not consider them.").

discovery Rule 56 motion whereas this matter involves a *pre*-discovery Rule 12(b)(6) motion.  (*Id.* at PageID 61–62.)

### b. *Monell* Liability

*First*, the Court must determine whether Plaintiff has shown the City has a "practice of overlooking constitutional torts" that "may be so common and well-settled that it fairly represents official policy."  (*Id.* at PageID 12–13.)  To prevail on this theory under *Monell*, Plaintiff must identify "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."  *Pembaur*, 475 U.S. at 480–81 (1986).  Plaintiff alleges that the City sanctioned eleven (11) customs that trigger liability under *Monell*:

(1) Using unreasonable and excessive force to carry out detentions and/or arrests.
(2) Arbitrarily using arrests when they are not necessary or permitted by law.
(3) Ignoring the serious need for training and supervision of its Officers regarding its policies and procedures when conducting detentions and/or arrests.
(4) Failing to adequately supervise and/or observe its Officers.
(5) Failing to adequately train Officers regarding the availability of alternative means other than the use of arrests, force, or excessive force without probable cause.
(6) Failing to discharge Officers who have shown a pattern or practice of falsely arresting citizens.
(7) Failing to exclude Officers who have shown a pattern or practice of misbehavior and using excessive force from taking part in the execution of warrants.
(8) Failing to adequately screen Officers who have shown a pattern or practice of using excessive force before hiring said officer.
(9) Failing to inform future employer of Officers who have shown a pattern or practice of using excessive force when future employer has inquired; and
(10) Failing to discharge Officers who have shown a pattern or practice of using excessive force; and
(11) Adopting a practice whereby Officers who are unfit for peace Officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

(ECF No. 1 at PageID 13–14.)  For analytical concision, the Court groups these factual allegations into two categories: affirmative and negative conduct.  It will treat allegations (1), (2), and (11) as affirmative and all others as negative conduct.[4]

As to affirmative conduct, analyzed under the second *Monell* theory, Plaintiff's allegations in (1), (2), and (11) lack sufficient facts to show the City had a "fixed plan of action" that manifested as a practice with "the force of law."[5]  *Pembauer*, 475 U.S. at 481; *Adickes*, 398 U.S. at 144.  Courts apply this standard, with like rigor, to Rule 12(b)(6) and Rule 56 disputes.[6]  *See Birgs*, 686 F. Supp. 2d at 780 (dismissing complaint under Rule 12(b)(6) because it "contain[ed] no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department."); *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (affirming summary judgment because complaint "presented no evidence that the county maintained policies or customs that would have caused her injury.")

---

[4] "Affirmative conduct" here simply means the City allegedly acted, whereas "negative conduct" means the City allegedly abstained from action it supposedly should have taken.  *See generally Holsapple v. Cunningham*, 817 F. App'x 95, 105 (6th Cir. 2020) (distinguishing "an omission from affirmative act").

[5] This standard does not ask much of Plaintiff; it merely requires *some* factual basis for the Court to conclude that a custom exists without assuming the worst about the City.  In *Wright v. City of Euclid*, for example, the plaintiff pointed to police training materials that "depict[ed] police officers beating African-American suspects" and a slideshow featuring a "cartoon in which a stick figure police officer in riot gear is shown beating a prone and unarmed civilian with a club."  962 F.3d 852, 880.  These facts led the Sixth Circuit to conclude that "Wright has produced enough evidence such that a reasonable jury could find that the City's custom surrounding use of force is so settled so as to have the force of law and that it was the moving force behind violations of Wright's constitutional rights."  *Id*. at 881.

[6] Where a plaintiff pleads specific allegations that raise factual questions for the jury, district courts deny motions to dismiss.  *See, e.g.*, *Stewart v. City of Memphis*, No. 2:16-cv-02574-STA-dkv, 2017 WL 627467, at *19 (W.D. Tenn. Feb. 15, 2017) (denying Rule 12(b)(6) motion because "Plaintiffs allege that Defendant City has a policy and/or custom of its officers failing to call for back-up and receiving coded radio transmissions in the presence of citizens not yet under arrest.").

Insofar as the Complaint is concerned, Plaintiff primarily relies on his personal experience with the MPD to warrant a finding that the City follows a deliberate custom of excessive force, arbitrary arrests, and retention of officers who abuse their authority.  (ECF No. 8 at PageID 58–59.)  The closest Plaintiff's Complaint gets to alleging such a policy or custom exists in this case is its allegation that Defendant Officers "have been sued for using excessive force to subdue two other individuals on ATVs."  (ECF No. 1 at PageID 14–15.)  Without more, however, this allegation establishes at most a conceivable claim that the City follows a deliberate custom or policy of excessive force.  To survive under *Twombly* and *Iqbal*, however, Plaintiff's claim must be plausible.  *See, e.g., Twombly*, 550 U.S. at 547 (dismissing plaintiffs' complaint because plaintiffs "ha[d] not nudged their claims across the line from conceivable to plausible").  Plaintiff has not included in his Complaint facts that show a "fixed plan of action" manifesting as a practice "with the force of law."  *Pembaur*, 475 U.S. at 481; *Adickes*, 398 U.S. at 144.

Indeed, even accepting as true the allegation that the City has been sued based on Defendant Officers' alleged use of excessive force to apprehend ATV riders, that mere allegation is insufficient to lead "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Reading the Complaint liberally, Plaintiff implies only a conclusory claim that the actions of the City in that case involves a deliberate policy or custom relevant to this case.[7]  He provides no details about the

---

[7] For example, the Complaint alleges that "the City's formal and informal actions reflect a policy, practice, custom and procedure authorizing and allowing constitutional rights violations. Consequently, the City is liable for harm caused to Plaintiff as a result of its policies, practices customs and procedures."  (ECF No. 1 at PageID 13.)  It further states that the City "sanctioned" a variety of "customs, practices, and policies" and that Defendant Officers "were acting pursuant to an official City policy, practice, custom and procedure overlooking and/or authorizing police Officer's excessive use of force and unlawful arrests."  (*Id.* at 13–14.)  The Court understands that "[t]he factual allegations need not be overly detailed, but nor can they merely recite the

dates or dispositions of the case, which officers were involved, or which specific customs or policies were relevant to that matter—facts that might help to show the Court why it is relevant here.  In short, Plaintiff has not identified any specific policy, much less an unconstitutional policy, on which to rest his *Monell* claim, nor has he shown a causal connection between that policy and Plaintiff's alleged constitutional deprivation beyond his assertion that the City is liable.  (ECF No. 1 at PageID 13.)  *See also Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 489 (6th Cir. 2020) ("[Municipal] liability 'must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff . . . .'") (quoting *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005)).

The Court acknowledges Plaintiff's argument that for purposes of evaluating a pleading under Federal Rule of Civil Procedure 8, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  Because the Complaint does not contain sufficient facts to suggest how the officers' conduct in this case reflected a "settled practice" condoned by the City and not an isolated incident, however, *see Adickes*, 398 U.S. at 167–68, the Court is not convinced that the mere allegation that one other case has been brought involving excessive force against people on ATVs is enough to put Defendants on notice of the municipal custom or policy that forms the basis for a finding of municipal liability.

To be sure, Plaintiff's Response presumably includes some additional context about the incident mentioned in the Complaint ("*Griham*"), and even includes the Complaint from that case.

---

elements of a cause of action and make a 'the-defendant-did-it' allegation."  *Siefert*, 951 F.3d at 759.

(ECF No. 13 at PageID 54; ECF No. 13-2.)  *See Griham*, 2022 WL 989175.  But those details, provided after the fact, are not enough to save him here.  The fact remains that Plaintiff's Complaint does not contain these additional pieces of information, and the Court is bound to consider the pleadings and not new arguments raised in the Response.  *See Shinault*, 2015 WL 4756499, at *2 n. 2.  Plaintiff simply may not introduce new facts in his Response to cure factual deficiencies in his Complaint.

But even if Plaintiff's Complaint provided the details of *Griham* included in his Response, the Court does not believe that case alone provides a sufficient basis on which to ground municipal liability.  The Complaint in *Griham* is nearly identical to Plaintiff's Complaint in this matter, so *Griham* does not provide any more information about the municipal custom or policy allegedly at issue than the Complaint in this case does.  Further, one incident alone is typically not sufficient to establish *Monell* liability.  *See City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"); *Bickerstaff v. Lucarelli*, 830 F.3d 399, 402 (6th Cir. 2016) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) ("a policy or custom cannot be established solely by a single instance of an employee's alleged misconduct.").  The Court finds the Complaint bereft of facts to show that the City's alleged "practice of overlooking constitutional torts," (*ECF* No. 1 at PageID 12), "is so widespread as to have the force of law" under *Monell*.  *Brown*, 520 U.S at 404; *see North*, 754 F. App'x at 386; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (". . . custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative

pronouncements."); *but see Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (county jail practice of detaining persons from Friday to Sunday when unable to post bail after warrantless arrest deemed a "custom" under *Monell*). Therefore, and for reasons previously discussed in note three, Plaintiff's argument fails and Plaintiff has not satisfied the second *Monell* theory. *See Johnson v. Metro Gov't of Nashville & Davidson Cnty.*, 502 F. App'x at 541–42.

Turning to negative conduct, the Court assesses Plaintiff's "failure to train" allegations under the third *Monell* theory.[8] Applying *Plinton*, Plaintiff must show that the City's "training program is inadequate to the task the officer must perform," that any such inadequacy results from the City's "deliberate indifference," and that it is "'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner*, 627 F. App'x at 413–14 (quoting *Plinton,* 540 F.3d at 464).

Here, like in *Plinton*, Plaintiff has failed to offer probative evidence for deliberate indifference because his Complaint does not adequately "show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher*, 398 F.3d at 849. Deliberate indifference is a "stringent standard of fault" that "even heightened negligence cannot suffice." *Brown*, 520 U.S. at 410. Here, Defendant has not provided information showing how the City's training is inadequate or facts indicating that such inadequacy was the result of "deliberate indifference" on the part of the City. Plaintiff submits that "Defendant City knew that

---

[8] Plaintiff cites *McNabb v. Memphis*, No. 03-cv-02334 M1/P, 2004 WL 2375631, *4 (W.D. Tenn. 2004) as authority that he has brought a plausible claim against the City. (ECF No. 13 at PageID 58.) However, the portion of the *McNabb* opinion he cites addresses claims against individual officers who sought qualified immunity—a different inquiry altogether from the one before this Court with respect to the City. He also cites *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017), which is inapposite for the same reason: it deals with immunity for officers, not municipalities (qualified versus sovereign immunity).

Defendant Officers were likely to engage in other acts of wrongful conduct" and refused to discipline them. Reading the Complaint liberally, Plaintiff could be trying to show "deliberate indifference" through this claim. But the Complaint offers no facts to support the conclusion that the City had such knowledge. At most, the Complaint suggests the City must have known these Officers were likely to engage in unlawful conduct because one other Complaint involving excessive force and ATVs has been filed against the City. And, of course, Plaintiff ultimately clarified that the other Complaint, also filed by Plaintiff's attorney, involves alleged misconduct by officers other than those named in this matter. (See ECF No. 13-2.) The Court fails to see how the Complaint, by alleging one other complaint exists, "demonstrate[s] that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher*, 398 F.3d at 849.

Moreover, Plaintiff's reliance on *Estate of Thiel v. Sterling Heights* is misplaced for two reasons.[9] First, the decedent in *Thiel* allegedly ran at police with a knife before they shot and killed him; the plaintiff then specifically pled that the defendant officers had been insufficiently trained *about handling violent criminals*, a particular type of training. No. 09-cv-12399, 2010 WL 3170510, *11 (E.D. Mich. 2010). Plaintiff does not make such a specific allegation here, but instead alleges that his injuries resulted from the City's deliberate indifference in general. (ECF No. 8 at PageID 59.) Unlike in *Thiel*, where the plaintiff alleged better training for handling violent offenders should have been conducted, Plaintiff alleges "the need for additional or different

---

[9] The Court notes two points for clarification. First, Plaintiff seemingly refers to the instant Motion in his Response as a motion for "judgment on the pleadings", which is a Rule 12(c) motion, when in fact Defendants filed a motion to dismiss under Rule 12(b)(6). (ECF No. 13 at PageID 50.) Second, Plaintiff seems to conflate qualified immunity with sovereign immunity; the former may or may not apply to the Defendant Officers, whereas the latter may or may not apply to the City. (*See id.*)

training was necessary" but does not even seek to specify what training that should be.  (ECF No. 1 at PageID 14.)  Second, the plaintiff in *Thiel*, as Plaintiff acknowledges in his Response, (ECF No. 13 at PageID 56.), identified "official policies" that the defendant officers allegedly breached; Plaintiff identified no such policies here.  Therefore, Plaintiff's generalized language "is insufficient to support an inadequate training claim" under the third *Monell* theory because it does not present "more than a sheer possibility," *Iqbal*, 556 U.S. at 678, that "municipal action was the moving force behind the injury of which the plaintiff complains."  *Munson v. Bryan*, No. 3:15-cv-0078, 2015 WL 4112429, *17 (M.D. Tenn. 2015); *Brown*, 520 U.S. at 405; *Harvey*, 453 F. App'x at 563.

All remaining *negative conduct* will be analyzed under the fourth *Monell* theory because it fits neatly under the "custom of inaction toward constitutional violations" umbrella.  *See Nouri*, 615 F. App'x at 296.  The Sixth Circuit requires Plaintiff to satisfy a four-prong test to sue the City under this theory: "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations."  *Id*.

Here, as in *Nouri*, Plaintiff's Complaint does not satisfy the first prong because it fails to show a "clear and persistent pattern" of misconduct outside the incident underlying this cause of action.  *Id.*  The Court acknowledges, as it did in its discussion of prior unconstitutional conduct, that the Complaint alleges another incident that could conceivably suggest a pattern of police misconduct tolerated by the City.  But the Complaint includes such scant detail about that case that the Court cannot say, based on that allegation alone, that the Plaintiff has established facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Only

in Plaintiff's Response does he include additional information, which does very little of the work he failed to do in his Complaint to establish *Monell* liability.

Because Plaintiff does not allege a plausible claim of a "'clear and persistent pattern' of misconduct," the Court finds that the Complaint also fails under the second, third, and fourth prongs; the City cannot have actual or constructive notice of, tacitly approve of, or be linked to a pattern of misconduct that is not properly alleged to exist. Moreover, "[t]o infer the existence of a city policy from the isolated misconduct of low-level officers, and then hold the city liable based on that policy, would amount to the very strict *respondeat superior* liability rejected by the Supreme Court in *Monell* and its progeny." *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 686 (W.D. Tenn. 2015); *see Munson*, 2015 WL 4112429, at *15. Therefore, the Court finds that Plaintiff has not shown a custom of tolerance by the City under the fourth *Monell* theory.

### c. GTLA Claim

The City argues that Plaintiff has not stated a cognizable state law claim for three reasons: (1) the GTLA codifies municipal immunity for civil rights claims; (2) the GTLA includes a discretionary function exception that bars any claim against the City based on failure to train police; and (3) the City, as a municipality, cannot be held vicariously liable for torts committed by its agents. *See* TENN. CODE ANN. § 29–20–205 (2021) (ECF No. 11 at PageID 44–45.) Plaintiff responds that his claims instead fall within the "intentional tort exception" sketched by the Tennessee Supreme Court in *Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73 (Tenn. 2001) and are therefore not statutorily barred.[10] (ECF No. 13 at PageID 60–61.)

---

[10] Plaintiff's argument finds no refuge in *Limbaugh*. "Decisions that rise to the level of planning or policy-making are considered to be discretionary acts requiring judicial restraint and are, therefore, not subject to tort liability." *Limbaugh*, 59 S.W.3d at 85.

The GTLA provides that "'[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result' from the exercise of government duties. 'No party may bring a suit against the State except in such manner and in such courts as the Legislature may by law direct.'" *Johnson v. City of Memphis*, 617 F.3d at 872 (quoting *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007)). "The State" includes municipalities. *Davidson*, 227 S.W.3d at 19. Tennessee courts only find waiver of sovereign immunity where "there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation," *id.*, and the GTLA removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." TENN. CODE. ANN. § 29-20-205 (2021). However, "[i]njuries that 'arise[] out of . . . civil rights' are one such exception, that is, *sovereign immunity continues to apply* in those circumstances' . . . . []GTLA's 'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 . . . ." *Johnson v. City of Memphis*, 617 F.3d at 872 (quoting TENN. CODE. ANN. § 29-20-205 (2010)) (emphasis added).

Here, because Plaintiff has not distinguished his § 1983 claim from his state law claim, the GTLA affords the City sovereign immunity from his § 1983 claims.[11] *See, e.g.*, *Johnson v. City of Memphis*, 617 F.3d at 872 ("Plaintiff's claim regarding . . . negligence arises out of the same circumstances giving rise to her civil rights claim under § 1983. It therefore falls within the exception listed in § 29-20-205, and the City retains its immunity."); *see Savage v. City of Memphis*, 620 F. App'x 425, 429–30 (6th Cir. 2015) ("[The] alleged negligence arises out of the

---

[11] Plaintiff asserts in his Response that the "circumstances are temporally and factually different," but his failure to develop this argument leaves the Court with nothing but his *ipse dixit*. Plaintiff's failure to discuss *how* any *specific* circumstances differ between the § 1983 claim and state law claim renders the Court's finding appropriate.

same circumstances giving rise to Plaintiffs' civil-rights claim. The district court thus correctly concluded that the City retains its immunity from Plaintiffs' negligence claims."); *see, e.g., Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("These torts are alleged to have been committed solely in the context of the violation of [plaintiff's] civil rights—this is in essence a civil rights suit.").  The law does not permit Plaintiff to disguise his § 1983 civil rights claim as one sounding in negligence to circumvent sovereign immunity, particularly when it is based on the same underlying facts.  *See Bryant v. City of Memphis*, 644 F. App'x 381, 384 (6th Cir. 2016); *Gomez*, 2021 WL 1647923, at *54 (". . . because Plaintiffs' negligence claims against the County arise out of the same circumstances giving rise to their § 1983 civil-rights claim, the Court finds that those claims are all subject to the []GTLA civil-rights exception.").  Therefore, the City is entitled to immunity.

Plaintiff cites *Partee v. City of Memphis, Tenn.*, 449 F. App'x 444, 448 (6th Cir. 2011) to allege that the City negligently hired, supervised, and retained the officers involved in the underlying incident.  (ECF No. 13 at PageID 60–61.)  However, *Partee* does not help Plaintiff's case because the court ultimately "declined to determine whether the additional circumstances required for a successful negligent-hiring claim . . . would remove this claim from the civil rights exception to suit in the GTLA."  *Partee*, 449 F. App'x at 449–50.  Further, the Sixth Circuit in *Partee* found "no need to decide the reach of the GTLA's 'intentional tort exception' . . . ."  *Id*. at 449.  Accordingly, the Court finds, consistent with operative precedent and those discussed by the parties, that the MPD's employment decisions fall squarely within the ambit of the discretionary function exception.  *See, e.g.*, *Peatross v. City of Memphis*, 2:14-cv-2343-SHL-cgc, 2015 WL 13021901, at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016) ("The sorts of determinations the MPD must make in how it screens, hires, trains and supervises its employees,

18

and how it goes about investigating and disciplining them for any misdeeds can be better characterized as planning rather than operational functions.  As a result, the City of Memphis is entitled to governmental immunity under the discretionary function exception of the []GTLA as to Plaintiff's charges of negligent supervision[.]"); *Gomez*, 2021 WL 1647923, *55; *see also Allred v. Rodriguez*, 399 F. Supp. 3d 730, 734–36 (W.D. Tenn. 2019) (collecting cases).  Therefore, the discretionary function exception precludes Plaintiff's claims against the City under the GTLA.[12]

### d. First, Fifth, and Eighth Amendment Claims

Defendants argue that Plaintiff's First, Fifth, and Eighth Amendment claims should be dismissed because Plaintiff has failed to (1) allege the deprivation of any right guaranteed by any of those amendments and (2) identify and connect a policy to the City that caused any such deprivation.  *See Garner*, 8 F.3d at 364 (ECF No. 13 at PageID 82.)  Plaintiff simply argues in his Response that his First Amendment retaliation claim should survive because the case has not yet reached its discovery phase.  (ECF No. 18 at 129.)  He adds that Defendants' citation to *Garner* should be discounted because *Garner* dealt with a Rule 56 motion rather than a Rule 12(b)(6) motion.  (*Id.*)

Here, and first, the Court adopts Defendants' unchallenged authority that "[t]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive force claims brought by convicted criminals serving their sentences" and cannot be brought by Plaintiff because he is not a convicted criminal.  (ECF No. 11 at PageID 44.)  *See Aldini v. Johnson*, 609 F.3d 8568, 864 (6th Cir. 2010); *Graham v. Connor*, 460 U.S. 386, 398–99 (1989) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)) ("[T]he less protective Eighth Amendment standard applies 'only after

---

[12] The Court reiterates that any claim to liability against the City based on a *respondeat superior* theory fails as a matter of law.  *Monell*, 436 U.S. at 491; *Wright*, 962 F.3d at 879.

the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'")  Thus, the Eighth Amendment does not afford Plaintiff relief.

Second, the Court adopts Defendants' unchallenged authority that the Fifth Amendment does not apply in this case because Plaintiff has not alleged any federal action.  *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000) (citing *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981)) ("the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government"); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Thus, Plaintiff does not have a Fifth Amendment claim against the City either.

Finally, the Court finds that the standard announced in *Garner* controls.  *Garner* involved a Rule 12(b)(6) motion to dismiss that the Sixth Circuit ultimately treated as a summary judgment motion because the district court considered filings outside the pleadings; consequently, and contrary to Plaintiff's assertion in his Response, *discovery had not yet occurred* when the district court issued its ruling in *Garner*.  *Garner*, 576 F. App'x at 461–62.  Moreover, as discussed earlier in this Order, Plaintiff has not shown any policy or custom that constituted a "moving force [behind] the constitutional violation" and thus fails to meet the *Garner* standard.  *Harris*, 489 U.S. at 385, 389 (1989); *see Miller*, 408 F.3d at 813.  The Sixth Circuit has also clearly stated that "*Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint."  *Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011).  Therefore, mindful of this guidance, the Court finds Plaintiff has failed to state a claim under the First Amendment.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant City of Memphis' Motion, (ECF No. 11), is hereby

**GRANTED**.  The Court **DISMISSES WITH PREJUDICE** all claims brought against the City

in the Complaint.  (ECF No. 1.)

       **IT IS SO ORDERED**, this 30th day of September, 2022.

                           *s/ Mark S. Norris*
                           MARK S. NORRIS
                           UNITED STATES DISTRICT JUDGE